## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DALLAS BUYERS CLUB, LLC,** | * | |
|  **Plaintiff,** | * | |
| | * | **CASE NO.:** |
| **v.** | * | |
| | * | **COPYRIGHT** |
| **DOE- 174.64.14.54,** | * | |
|  **Defendant** | * | **SECTION** |
| | * | |

**\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \***

### MEMORANDUM IN SUPPORT OF MOTION FOR AUTHORITY TO SEEK DISCOVERY PRIOR TO RULE 26(F) CONFERENCE

Pursuant to Fed. R. Civ. P. 26(d)(1), plaintiff Dallas Buyers Club, LLC ("DBC"), has moved for authority to take discovery prior to the case management conference required by Fed. R. Civ. P. 26(f).  This is a suit for infringement of DBC's copyrighted motion picture by a person whose identity is known to DBC only by the unique Internet Protocol ("IP") address assigned by the Internet Service Provider ("ISP") to the Internet account used by the unknown infringer (currently denominated in the Complaint and hereinafter as "Doe").  DBC seeks leave to take early discovery for the limited purpose of serving a non-party subpoena on the ISP solely to learn the identity of Doe.  DBC seeks discovery of only the specific information of the identity of the subscriber or party assigned the IP address used by the Doe Defendant.

Practically speaking the case management conference required by Fed. R. Civ. P. 26(f) cannot occur until after Doe's identity is learned and he or she is served with the Summons and Complaint; therefore, serving a subpoena on Doe's ISP to discover Doe's identity is a necessary prerequisite for conducting the case management conference and prosecuting this copyright infringement action.  Fed. R. Civ. P. 26(d)(2) expressly permits courts to authorize discovery in

advance of a Rule 26(f) conference "for the parties' and witnesses' convenience and in the interests of justice." For the reasons discussed more fully below and in the interests of justice, this motion should be granted.

## STATEMENT OF FACTS

*Dallas Buyers Club* ("Motion Picture") is an acclaimed major motion picture nominated for six Academy Awards (Oscars). The Motion Picture was created using well-known actors and actresses, directors, cinematographers, lighting technicians, set designers, and editors. The Motion Picture was created with professional-grade cameras, lighting, and editing equipment.

*Dallas Buyers Club* is protected by United States Copyright laws, including laws at they pertain to Registration No. PA 1-873-195 (the "'195 Copyright"), owned exclusively at all relevant times by plaintiff DBC. <u>See</u> Exhibit 1 to the Complaint, Certificate of Registration. The Motion Picture is currently offered for sale in commerce and is available on iTunes, Amazon, Google Play and other commercial outlets. Defendant had notice of plaintiff's rights through general publication and advertising and more specifically through the content of the Motion Picture itself, advertising associated with the Motion Picture, and marketing and copies, each of which bore a proper copyright notice. DBC comes to Court seeking relief because the Motion Picture *Dallas Buyers Club*, once released, became one of the most trafficked films in the BitTorrent network (explained below) and is being illegally downloaded and distributed countless times worldwide with many confirmed instances of infringing activity traced to Louisiana. <u>See</u> generally, Complaint.

## Peer-To-Peer Internet Piracy in General

The Doe Defendant in this action acted in a collective and interdependent manner with others via the Internet to reproduce and distribute unlawfully DBC's copyrighted Motion Picture by means of interactive "peer-to-peer" ("P2P") file transfer technology protocol.  P2P networks, at least in their most common form, are computer systems that enable each Internet user to: 1) make files (including motion pictures) stored on that user's computer available for copying by other Internet users or "peers"; 2) search for files stored on other users' computers; and 3) transfer exact copies of files from one computer to another via the Internet.  The particular P2P protocol at issue in this suit is called "BitTorrent."  Decl. Macek,[1] ¶ 6.  Digital piracy, including BitTorrent piracy, costs the entertainment industry over $80 billion per year.[2]

Internet piracy, and in particular BitTorrent piracy, is often a for-profit business.  Many software clients, torrent sites and networks generate millions of dollars in revenue through sales and advertising.[3]  To increase the value of the advertising and sometimes subscription access sold by torrent sites, many parties work to expand the pool of available titles and speed of downloads available by increasing the number of member peers and thus the desirability of their clients and networks.  To accomplish this they often reward participants who contribute to the distribution of the work by giving them faster download speeds, greater access, or other benefits.

Doe's participation in the BitTorrent exchange of DBC's Motion Picture is the type of activity torrent sites use to promote their business and likely directly furthered the for-profit

---

[1]      Declaration of Daniel Macek in Support of Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26 Conference.

[2]      International Chamber Commerce, Estimating the Global Economic and Social Impacts of Counterfeiting and Piracy, Feb. 2011.   See   http://www.iccwbo.org/Advocacy-Codes-and-Rules/BASCAP/BASCAP-Research/Economic-impact/Global-Impacts-Study/   (Estimating   digitally pirated music, movies and software accounting for between $80 billion and $240 billion in 2015.)

[3]      The U.S. Justice Department claims Megaupload (aka Kim Dotcom) earned more than $175,000,000 in illegal profits as of 2012.  http://www.justice.gov/opa/pr/justice-department-charges-leaders-megaupload-widespread-online-copyright-infringement.

business of at least one torrent site.  Many parties, and possibly Doe, have been compensated for their participation in expanding the availability of pirated content to others through BitTorrent networks, including DBC's movie.  The use of BitTorrent does more than cause harm through the simple theft of intellectual property.  The BitTorrent distribution of pirated files is a model of business that profits from theft through sales and advertising and provides a system of rewards and compensation to the participants, each of whom contributes to and furthers the enterprise. Based on activity observed associated with Doe's IP address, Doe is a prolific participant in the BitTorrent distribution system advancing the BitTorrent economy of piracy.

### Doe's BitTorrent Piracy of the Motion Picture

BitTorrent associates a unique file identifier (a "hash") generated by an algorithm developed and implemented by the National Security Agency to each file distributed through the BitTorrent protocol. One such hash, SHA1: F18A60DB02EC3B55C18924F47955DE766DACC537 ("Hash SHA1: F18A"), was assigned to a specific torrent file containing information directing computer programs ("BitTorrent clients") designed to read such files to other Internet users ("peers") also sharing and downloading the digital media described in Hash SHA1: F18A, namely, a particular unauthorized copy of DBC's copyrighted Motion Picture.  Decl. Macek, ¶ 25.

Doe initiated his or her infringement of DBC's copyrighted Motion Picture by first intentionally logging into the one of many BitTorrent client repositories such as The Pirate Bay[4] known for their large index of torrent files for copyrighted movies, television shows, and software.  Doe then intentionally obtained the torrent file Hash SHA1: F18A from the index, intentionally copied it to his computer, and intentionally opened Hash SHA1: F18A with his

---

[4]        www.thepiratebay.se/.

BitTorrent client.  Doe's BitTorrent client initiated simultaneous connections with hundreds of other peer users possessing and "sharing" copies of the digital media described in Hash SHA1: F18A, namely, the particular unauthorized copy of DBC's Motion Picture.  The program then coordinated the copying of DBC's Motion Picture to Doe's computer from peers, thus creating for Doe an unauthorized copy of the Motion Picture.[5]

As the Motion Picture was copied to Doe's computer piece by piece, these downloaded pieces of DBC's Motion Picture were then made available to all other peers from Doe's computer.  By intentionally participating in and performing these acts, Doe became an uploader (and therefore a distributor) of the unauthorized copy of the Motion Picture, meaning that Doe's downloaded pieces were available to other users seeking to obtain the file, without degradation in sound or picture quality.   In this way the Doe Defendant illegally copied and distributed DBC's Motion Picture.

This interactive, simultaneous data-sharing connection, referred to as a "swarm," leads to a rapid spreading of a file throughout peer users.  As more peers join the swarm, the likelihood of a successful download increases.  Because of the nature of a BitTorrent protocol, any user that has downloaded a piece prior to the time a subsequent user downloads the same file is automatically a source for the subsequent user so long as that prior user is online at the time the subsequent user downloads a file.  Thus, after a successful download of a piece, the piece is made available to any Internet user.  Through this process, Doe's distribution of even a single unlawful copy of the Motion Picture can result in the nearly instantaneous worldwide distribution of that single copy to an unlimited number of people.  In this case, Doe's copyright

---

[5]        The machinations of BitTorrent are complex.  While there are many guides available, BitTorrent, Inc. has published a guide at http://computer.howstuffworks.com/bittorrent.htm.

infringement built upon the prior infringements, contributing to an explosion of infringement of DBC's rights in the Motion Picture.

Doe participated in a BitTorrent "swarm" in which numerous persons engaged in mass copyright infringement of DBC's Motion Picture. Doe illegally uploaded, shared, and therefore distributed DBC's Motion Picture within the swarm. Doe was a willing and knowing participant in the swarm at issue and engaged in such participation for the purpose of infringing DBC's copyright. DBC's investigator verified Doe's participation in the swarm by downloading at least a portion of the Motion Picture from Doe. Decl. Macek, ¶19 and 25.

In addition, because a BitTorrent swarm is a collective enterprise where each downloader is also an uploader, the group of uploaders collaborates to speed the completion of each download of the file, each thus contributing to the infringing conduct of the others. Upon information and belief, Doe also acted in concert with other swarm members by linking together globally through use of a Distributed Hash Table. A Distributed Hash Table is a sort of worldwide telephone book, which uses each file's "infohash" (a unique identifier for each torrent file) to locate sources for the requested data. Thus, swarm members are able to access a partial list of swarm members rather than being filtered through a central computer called a tracker. Allowing members of the swarm to rely on numerous individual computers for information not only reduces the load on the central tracker, but also means every person sharing this data is also contributing to the functioning of this collaborative worldwide network.

**Identifying Doe**

Despite DBC's use of the best available investigative techniques, it is impossible for DBC to identify Doe by name at this time. As noted above, Doe's infringement involved simultaneous P2P connections with peers over the Internet. In making these connections, Doe

was identified to his peers only by his unique IP address assigned by Doe's ISP.  Decl. Macek,

¶ 18.  The name of the Internet user behind IP address 174.64.14.54 is not public information,

and in fact infringers typically attempt to hide their identity.[6]  BitTorrent pirates must, however,

identify themselves by their unique IP addresses to make the Internet connections with their

peers that enable them to obtain and distribute their pirated copies of works such as the Motion

Picture.

Doe is known to DBC by the unique IP address assigned to Doe by his ISP on the

particular date and at the specific time when Doe's infringing activity was observed.  Decl.

Macek, ¶ 16.  In addition, DBC has learned the identity of the ISP for Doe at that time, , and the

approximate location of Doe at the time of download as determined by geolocation technology.[7]

Decl. Macek, ¶ 19.  This information for Doe is attached to the Complaint as Exhibit 2.

Doe, identified in the Complaint as DOE-174.64.14.54, while assigned the unique IP

address of 174.64.14.54 by his ISP, consistently distributed DBC's Motion Picture for several

days, including multiple distributions on January 16, 2016.  Decl. Macek, ¶ 25.  In addition, Doe,

while assigned the unique IP address of 174.64.14.54 by his ISP, has been observed as associated

with the peer-to-peer exchange of numerous copyrighted titles through the BitTorrent network,

which can be filed if requested by the Court.[8]  The volume and titles of the activity associated

with Defendant's IP address indicates Doe is an authorized user of the IP address with consistent

---

[6]     The United States Supreme Court has recognized the First Amendment provides limited protection of anonymous speech.  *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 199-200, 119 S.Ct. 636, 142 L.Ed.2d 426 (1995).  "The First Amendment does not, however, provide a license for copyright infringement."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010).  "Thus, to the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment."  *Id.*

[7]     DBC is able to determine the city in which Doe is located based upon publically available information, but has no way of narrowing Doe's location any further.  Decl. Macek, ¶ 26.

[8]     Because each of the other titles may also expose the Doe Defendant to possible liability and also presents a fuller list of the content and viewing habits accessed through the Doe Defendant's IP address, Plaintiff refrains at this time from filing the full list.

and permissive access; therefore, Doe is likely the primary subscriber of the IP address or someone who resides with the subscriber. The volume of the activity and content associated with Doe's IP address also indicates anyone actively using or observing activity on the IP address would likely be aware of the conduct of Doe and Doe is not a young child.

DBC is unable to identify Doe by researching public information, including IP address registration databases such as WhoIs.com and WhatIsMyIPAddress.com. As reflected by the results of searches of these databases attached as Exhibits 3 and 4, the search results do indicate the IP address was assigned to a subscriber within this District. Despite such investigative efforts, DBC is unable to identify Doe and is only able to identify the ISP used by Doe. Decl. Macek, ¶¶ 16 and 19.

The ISP who assigned the IP address used by Doe maintains use logs identifying the subscriber assigned the IP address at the specific times and on the specific dates Doe's infringing activity was observed. From this log, the ISP will be able to identify its subscriber to whom Doe's IP address had been assigned at the time of the observed infringement. Decl. Macek, ¶ 18. ISPs typically do not maintain such logs indefinitely; therefore, delay in obtaining this information risks loss of the information and with it, DBC's ability to prosecute this action and protect its valuable rights.

To learn Doe's true name and permit DBC to amend its Complaint to name the defendant, DBC seeks an order authorizing it to subpoena the ISP that issued the IP address used by Doe in order to learn the identity of the account holder or subscriber for that IP address. ISP Cox Communications, Inc. ("Cox") managed Doe's IP address at that specific time of Doe's observed infringement. The records Cox maintains should be able to identify either the Doe

Defendant or the subscriber who contracted with Cox for service, who in turn is likely to have knowledge that will lead to the identity of Doe.

## <u>DISCUSSION</u>

Generally, Fed. R. Civ. P. 26(d)(1) prohibits parties from engaging in discovery prior to a Rule 26(f) conference. *Schexnayder v. MD Nigeria LLC,* 2015 U.S. Dist. LEXIS 81409, p. 3 (W.D. La. 6/23/2015). "An exception to the general prohibition against pre-conference discovery applies when discovery is 'authorized by ... court order.' Fed. R. Civ. P. 26(d)(1)." *Schexnayder*, at p. 3. Fed. R. Civ. P. 26(d)(2) expressly permits courts to authorize discovery in any sequence "for the parties' and witnesses' convenience and in the interests of justice." *Dallas Buyers Club, LLC,* 2015 U.S. Dist. LEXIS 171553, p. 3 (N.D. Cal. 12/22/2015).

The United States Court of Appeal for the Fifth Circuit has not established a clear standard for allowing expedited discovery; however many courts, including courts in the Fifth Circuit, grant discovery before a Rule 26(f) conference where "good cause" exists. *See, e.g., Schexnayder,* at p. 4*, Wilson v. Samson Contour Energy E & P, LLC*, 2014 U.S. Dist. LEXIS 88992, 2014 WL 2949457,  p. 2 (W.D. La. June 30, 2014); *BKGTH Prods., LLC v. Doe,* 2013 U.S. Dist. LEXIS 140924, 2013 WL 5507297, p. 6 (E.D. La. Sept. 30, 2013).  Under a "good cause" analysis, courts "examine the discovery request on the entirety of the record to date and the reasonableness of the request in light of the surrounding circumstances." *Schexnayder,* at p. 4*, Wilson*, 2014 U.S. Dist. LEXIS 88992, 2014 WL 2949457, p. 2 (quoting *BKGTH Prods., LLC*, 2013 U.S. Dist. LEXIS 140924, 2013 WL 5507297, p. 5).  "Although the factors used by Courts may vary, good cause typically exists where 'the need for expedited discovery outweighs the prejudice to the responding party.'" *BKGTH Prods., LLC*, 2013 U.S. Dist. LEXIS 140924, 2013 WL 5507297, p. 5 (quoting *St. Louis Group, Inc. v. Metals and Additives Corp., Inc.*, 275 F.R.D.

236, 239-40 (S.D. Tex. 2011).  The party seeking expedited discovery has the burden to establish

good cause.  *BKGTH Prods., LLC*, 2013 U.S. Dist. LEXIS 140924, 2013 WL 5507297, p. 5

(citing *Qwest Communs. Int'l, Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo.

2003).

       In situations such as the present case, "where the identity of alleged defendants will not

be known prior to the filing of a complaint …, the plaintiff should be given an opportunity

through discovery to identify the unknown defendants, unless it is clear that discovery would not

uncover the identities, or that the complaint would be dismissed on other grounds."  *Gillespie v.*

*Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  *See also Murphy v. Goord*, 445 F.Supp.2d 261, 266

(W.D.N.Y. 2006) (in situations where the identity of alleged defendants may not be known prior

to the filing of a complaint, the plaintiff should have an opportunity to pursue discovery to

identify the unknown defendants); *Valentin v. Dinkins*, 121 F.3d 72, 75-76 (2d Cir. 1997)

(plaintiff should have been permitted to conduct discovery to reveal identity of defendant);

*Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980) (where "party is ignorant of defendants' true

identity ... plaintiff should have been permitted to obtain their identity through limited

discovery"); *Equidyne Corp. v. Does 1-21*, 279 F.Supp.2d 481, 483 (D. Del. 2003) (allowing pre-

Rule 26 conference discovery from ISPs to obtain identities of users anonymously posting

messages on message boards).

       In copyright actions against unknown BitTorrent defendants, "it is reasonable to use an IP

address as a starting point to obtain identifying information about a Doe defendant who, through

digital forensic means, has been tied to the torrent swarm at issue."  *West Coast Productions, Inc.*

*v. Does 1-351,* 2012 U.S. Dist. LEXIS 92239 (S.D.Tx. 7/3/2012), p. 13.  *See also Cobbler*

*Nevada, LLC v. Does 1-21,* 2015 U.S. Dist. LEXIS 150927, p. 5 (D.Colo. 11/6/2015) and

*Cobbler Nevada, LLC v. Does 1-11,* 2015 U.S. Dist. LEXIS 153289, p. 7 (D.Colo. 11/12/2015) (both recognizing, "Plaintiff's attempt to obtain information from the ISP is a necessary first step in plaintiff's process of discovering the identities of the alleged infringers for the purpose of enforcing its copyright").

Consistent with that premise, courts across the country have routinely granted motions for expedited discovery directed to an ISP to identify defendant from his IP address. *Living Scriptures, Inc. v. Doe*, 2010 U.S. Dist. LEXIS 119968 (D. Utah 11/9/201) (observing that "courts routinely allow discovery into the identities of defendants in cases like this one" when considering a motion for expedited discovery to identify an online infringer). In December 2015 alone in similar copyright infringement actions, courts ruled good cause existed and issued orders authorizing expedited discovery directed to ISPs to identify BitTorrent defendants known only by their IP addresses in *Cobbler Nevada, LLC v. Doe-68.8.213.203,* 2015 U.S. Dist. LEXIS 167667 (S.D. Cal. 12/15/2015), *Cobbler Nevada, LLC v. Doe-73.15.228.64,* 2015 U.S. Dist. LEXIS 166543 (N.D. Cal. 12/11/2015), *Dallas Buyers Club, LLC v. Doe-50.174.109.117,* 2015 U.S. Dist. LEXIS 163090 (N.D. Cal. 12/3/2015), *Dallas Buyers Club, LLC v. Doe,* 2015 U.S. Dist. LEXIS 162333 (M.D. Fla. 12/3/2015), *Cobbler Nevada, LLC v. Does 1-30,* 2015 U.S. Dist. LEXIS 160665 (E.D. Mich. 12/1/2015), *Cobbler Nevada, LLC v. Does 1-10,* 2015 U.S. Dist. LEXIS 172753 (E.D. Mich. 12/30/2015), and *Malibu Media, LLC v. Doe,* 2015 U.S. Dist. LEXIS 161495 (D. Md. 12/2/2015).

A leading case discussing the factors to be weighed in determining whether good cause exists in cases such as the present one is *Columbia Insurance Co. v. Seescandy.com,* 185 F.R.D. 573 (N.D. Cal. 1999), a suit for trademark infringement arising out of an unknown defendant's

online registration of infringing internet domain names using fictitious names, addresses, and

contact information.  The court observed:

> With the rise of the Internet has come the ability to commit certain tortious acts, such as defamation, copyright infringement, and trademark infringement, entirely on-line. The tortfeasor can act pseudonymously or anonymously and may give fictitious or incomplete identifying information. Parties who have been injured by these acts are likely to find themselves chasing the tortfeasor from Internet Service Provider (ISP) to ISP….

> In such cases the traditional reluctance for permitting filings against John Doe defendants or fictitious names and the traditional enforcement of strict compliance with service requirements should be tempered by the need to provide injured parties with a forum in which they may seek redress for grievances.

*Columbia,* 185 F.R.D. at 578.

Mindful of the right to participate in online forums anonymously, the court identified

safeguards to "ensure that this unusual procedure will only be employed in cases where the

plaintiff has in good faith exhausted traditional avenues for identifying a civil defendant pre-

service, and will prevent use of this method to harass or intimidate."  *Columbia,* 185 F.R.D. at

578.  Those safeguards are:

1. "First, the plaintiff should identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court."[9]

2. "Second, the party should identify all previous steps taken to locate the elusive defendant."[10]

3. "Third, plaintiff should establish to the Court's satisfaction that plaintiff's suit against defendant could withstand a motion to dismiss."[11]

---

[9]   "This requirement is necessary to ensure that federal requirements of jurisdiction and justiciability can be satisfied."  *Columbia,* 185 F.R.D. at 578.

[10]   "This element is aimed at ensuring that plaintiffs make a good faith effort to comply with the requirements of service of process and specifically identifying defendants."  *Columbia,* 185 F.R.D. at 579.

[11]   "A conclusory pleading will never be sufficient to satisfy this element.  Pre-service discovery is akin to the process used during criminal investigations to obtain warrants.  The requirement that the government show probable cause is, in part, a protection against the misuse of *ex parte* procedures to invade the privacy of one who has done no wrong.  A similar requirement is necessary here to prevent

4. "Lastly, the plaintiff should file a request for discovery with the Court, along with a statement of reasons justifying the specific discovery requested as well as identification of a limited number of persons or entities on whom discovery process might be served and for which there is a reasonable likelihood that the discovery process will lead to identifying information about defendant that would make service of process possible."[12]

In the present case, DBC's Complaint satisfies each of the above safeguards.

## I.   DBC HAS IDENTIFIED THE MISSING PARTY WITH SUFFICIENT SPECIFICITY.

The allegations of DBC's Complaint identifies Doe with sufficient specificity that the court can determine Doe is a real person who could be sued in this Court.  Doe was observed participating in a swarm sharing Hash SHA1: F18A.  Complaint, ¶¶ 26-39; Decl. Macek, ¶ 25. At the time of the infringement, DBC's investigator captured: 1) the time and date at which the file or a part of the file was distributed Doe; 2) the IP address used by Doe and assigned by the ISP to Doe at the time of infringement; 3) the ISP for the IP address used by Doe; and, in some cases, 4) the video file's metadata (digital data about the file); 5) the BitTorrent client application (program) used by Doe; 6) the global unique identifier for each file downloaded by Doe; and 7) the location of Doe (by city and state) at the time of download, as obtained by geolocation technology.  Decl. Macek, ¶¶ 13, 19 and 25.  The captured data establishes Doe is a real person who used an IP address that uniquely identified him to others on the Internet.  The IP address Doe used is significant because it becomes a unique identifier that, along with the date and time of infringement, allows an ISP to identify a certain subscriber.

abuse of this extraordinary application of the discovery process and to ensure that plaintiff has standing to pursue an action against defendant."  *Columbia,* 185 F.R.D. at 579-80.

[12]     *Columbia,* 185 F.R.D. at 580.

Using geolocation technology, DBC has traced that subscriber to this Court's jurisdiction. Decl. Macek, ¶ 26.  Thus, DBC has sufficiently identified Doe as an actual person amenable to suit in this Court who is behind the infringing actions alleged in the Complaint.

## II      DBC HAS IDENTIFIED ALL STEPS TAKEN TO IDENTIFY DOE.

While assigned the unique IP address of 174.64.14.54 by his ISP, Doe was observed consistently distributing DBC's Motion Picture at specific times and on specific dates for several days, including January 16, 2016.  Decl. Macek, ¶¶ 19 and  25.  In addition, Doe, while assigned the unique IP address of 174.64.14.54 by his ISP, was observed as associated with the peer-to-peer exchange of **hundreds** of copyrighted titles through the BitTorrent network.  The volume and titles of the activity associated with Defendant's IP address indicates Doe is an authorized user of the IP address with consistent and permissive access; therefore, Doe is likely the primary subscriber of the IP address or someone who resides with the subscriber.  The volume of the activity and content associated with Doe's IP address also indicates anyone actively using or observing activity on the IP address would likely be aware of the conduct of Doe and Doe is not a young child.

Publicly available databases located on the Internet list the IP address ranges assigned to various ISPs.  Decl. Macek, ¶ 16.  Each time a subscriber logs on, he or she may be assigned a different IP address.  Decl. Macek, ¶ 16.  DBC's investigation of public databases has not revealed the name and address of Doe.  See Exhibits 3 and 4.  DBC has taken all the steps it can to identify Doe, but must resort to the ISP's user logs to discover the identity of the subscriber assigned IP address 174.64.14.54 at the specific times and on the specific dates of the infringement.  DBC has made a good faith effort to identify Doe specifically and to serve notice on him.

## III.   DBC'S SUIT COULD WITHSTAND A MOTION TO DISMISS.

DBC has asserted a *prima facie* claim for direct copyright infringement in its Complaint that can withstand a motion to dismiss.  The elements of copyright infringement are: 1) ownership of a valid copyright; and 2) unauthorized copying of original elements of the copyrighted work.  *Feist Publications, Inc. v. Rural Telephone Svc. Co., Inc.*, 499 U.S. 340 (1991).  DBC has alleged these elements.

Specifically, DBC has alleged: 1) it owns the exclusive rights under the registered copyright for the Motion Picture, and 2) Doe copied or distributed the copyrighted Motion Picture without DBC's authorization.  Complaint at ¶¶ 6-10 and 24-39.  These allegations state a claim for copyright infringement.  *See* 17 U.S.C. § 106(1)(2); *In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003), *cert. denied*, 124 S. Ct. 1069 (2004) ("Teenagers and young adults who have access to the Internet like to swap computer files containing popular music.  If the music is copyrighted, such swapping, which involves making and transmitting a digital copy of the music, infringes copyright."); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014-15 (9th Cir. 2001) ("Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights. Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights").

DBC, through its investigator, observed Doe's IP address distributing a copy of DBC's copyrighted Motion Picture.  To confirm the file Doe was distributing contained DBC's copyrighted Motion Picture, the investigator's employee or independent contractor watched both the movie contained in the downloaded file and DBC's Motion Picture and confirmed the downloaded file contained DBC's Motion Picture.  Decl. Macek, ¶¶ 20-22.

Despite DBC's exclusive ownership of the copyright at issue, Doe engaged in an act of infringement by copying and reproducing the Motion Picture resulting in its unauthorized dissemination.  As a result of this infringement, DBC suffered, continues to suffer, and is entitled to recover damages. 17 U.S.C. § 504.  DBC's allegations are sufficient to withstand a motion to dismiss.

## IV.    DBC HAS SPECIFIED THE REQUESTED DISCOVERY.

DBC has specified the requested discovery.  Exhibit 2 provides the Court with the IP address identified for Doe and his or her corresponding ISP.  The discovery sought is limited to subpoenaing Doe's ISP in order to learn Doe's identity, or the identity of the subscriber assigned the IP address who is likely to in turn known the identity of the Doe.  The discovery is narrowly tailored to obtain only the information required to proceed.  *Arista Records, LLC v. Does 1-43*, 2007 WL 4538697 (S.D. Cal. 2007); *Raw Films, Ltd. v. Does 1-11*, 2012 WL 684763 (S.D. Cal. 2012).  Discovery of this information will not prejudice Doe.

## V.    OTHER FACTORS ALSO WEIGH IN FAVOR OF ALLOWING EXPEDITED DISCOVERY.

Courts have taken into consideration other factors when deciding whether good cause exists for authorizing expedited discovery pursuant to Fed. R. Civ. P. 26(d).  When applied to the circumstances of the present case, each of those factors supports a finding of good cause.

"[S]ome courts have allowed limited, expedited discovery when failing to do so would have substantially impacted the case from progressing on the court's docket." *St. Louis Group, Inc. v. Metal and Additives Corp.*, 275 F.R.D. 236, 241 (S.D. Tx. 2011) (and cases cited therein). *See also Well Go USA, Inc. v. Unknown Participants in File Sharing Swarm,* 2012 U.S. Dist. LEXIS 137272, p. 4 (S.D. Tx. 11/24/2012) (allowing limited discovery when "[w]ithout

16

expedited discovery to uncover Defendants' identifying information, the Court finds that Plaintiff cannot proceed"); *Indigital Solutions, LLC v. Mohammed*, 2012 U.S. Dist. LEXIS 163033, p. 8 (S.D. Tx. 11/15/2012) (granting motion for expedited discovery where "unless the plaintiffs are permitted to seek pretrial discovery, they will not be able to obtain the information necessary to learn the true names and addresses for the defendants involved in the hijacking"); *Cobbler Nevada, LLC v. Does 1-30*, 2015 U.S. Dist. LEXIS 160665, p. 16 (E.D. Mich. 12/1/2015) (granting leave for expedited discovery where the court "also finds that the information sought by Plaintiff is necessary to prosecute the Plaintiff's claim and otherwise unavailable"); *Dallas Buyers Club, LLC v. Does 1-10,* 2015 U.S. Dist. LEXIS 172753, p. 6 (E.D. Mich. 12/30/2015) (allowing expedited discovery where the court "also finds that the information sought by Plaintiff is necessary to prosecute the Plaintiff's claim and otherwise unavailable"), and *Cobbler Nevada, LLC v. Does 1-21*, 2015 U.S. Dist. LEXIS 150927, p. 5 (D. Colo. 11/6/2015) (refusing to quash a pre-conference subpoena where "Plaintiff's attempt to obtain information from the ISP is a necessary first step in Plaintiff's process of discovering the identities of the alleged infringers for the purpose of enforcing its copyright").

As in the cited cases, in the present case DBC cannot proceed without the expedited discovery.  As DBC has shown, without the discovery, DBC will not be able to obtain the information necessary to learn the true name and address of Doe.  The information is necessary to prosecute DBC's claims and is otherwise unavailable.  Obtaining the information from the ISP is a logical and necessary first step in DBC's process of discovering the identity of the alleged infringers for the purpose of enforcing DBC's copyright.  *See West Coast Productions, Inc. v. Does 1-351*, 2012 U.S. Dist. LEXIS 92239, p. 13 (S.D. Tx. 7/3/2012) (finding "it is reasonable to use an IP address a starting point to obtain identifying information about a Does Defendant who,

17

through digital forensic means, has been tied to the torrent swarm in issue").  Accordingly, DBC has good cause for serving expedited discovery on the ISP.

Other courts have granted plaintiffs' motions for expedited discovery upon a showing "that the discovery it seeks is reasonably likely to lead to identifying information that will permit service of process on the Doe defendant."  *Dallas Buyers Club, LLC v. Doe-50.76.49.97*, 2015 U.S. Dist. LEXIS 171553, pp. 6-7 (N.D. Cal. 12/22/15) and *Dallas Buyers Club, LLC v. Doe-50.174.107.117*, pp. 6-7 (N.D. Cal. 12/3/2015).  In the cited cases, the plaintiffs alleged "on information and belief that Comcast Cable generally assign an IP address to a single party for extended periods of time and that Comcast Cable's records should identify either the Doe defendant or the subscriber who knows the Doe defendant."  *Id.*  "The identifying information allows Plaintiff to make a good faith investigation into whether a particular individual has a reliable factual connection to the IP address associated with the swarm."  *West Coast Productions,* 2012 U.S. Dist. LEXIS 92239, p. 13.

While many often question the efficacy of investigations such as Plaintiff's, in at least one jurisdiction where the outcome of BitTorrent litigation is tracked and of record, it has been observed:

> **Based on Plaintiffs' successful identification of defendants in the vast majority of the cases it has filed in 2014, the court finds it likely that the requested discovery will uncover the identity of the defendant in this case as well.**  Further, the allegations of the complaint, the identification of the IP Address, and the type of infringing activity alleged, make clear the defendant is a real person subject to the court's jurisdiction.  These findings, combined with the findings on the two elements set forth above – the steps to locate defendant and the likelihood the complaint will withstand a motion to dismiss – establish Plaintiffs are entitled to the non-party discovery requested.

*Voltage Pictures, et al. v. Doe*, 3:14-cv-01872-AC (D.Or. April 9, 2015) (emphasis added.)

As noted in DBC's Complaint, the content and level of activity observed and associated with Doe's IP address shows Doe is likely a competent adult who is either the subscriber himself or someone well known to the subscriber with permissive access to the subscriber's account. The expedited discovery for which DBC seeks leave is a reasonable and logical first step and is likely to lead to the identification of Doe.  This factor supports a finding of good cause.

Where "physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation," good cause for discovery before the Rule 26 conference exists." *Qwest Comm. Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003). S*ee also Pods-Ners, LLC v. Northern Feed & Bean of Lucerne, LLC*, 204 F.R.D. 675, 676 (D. Colo. 2002) (allowing discovery prior to Rule 26 conference to inspect items in defendant's possession because items might no longer be available for inspection if discovery proceeded in the normal course).  As courts have recognized, the information DBC seeks is "time sensitive because ISPs do not retain user activity logs for an extended duration." *Dallas Buyers Club, LLC v. Doe*, 2015 U.S. Dist. LEXIS 162333, p. 2 (M.D. Fla. 12/3/2015). *See also Indigital Solutions*, 2012 U.S. Dist. LEXIS at p. 9 (acknowledging "Plaintiff's also justify their need for expedited discovery based on the fact that many ISPs preserve their logs for a limited period of time").  In the present case, the possibility the ISP will destroy the logs needed to identify Doe supports a finding of good cause.  If that information is erased, DBC will have no ability to identify Doe, and thus, will be unable to pursue its lawsuit to protect its copyrighted work.

The United States District Court for the Eastern District of Louisiana has previously expressed a concern that discovery such as sought by the instant motion "has the potential to permit Plaintiff to obtain detailed personal information of innocent individuals," and this "could

subject an innocent individual to unjustified burden." *BKGTH Productions, LLC*, 2013 U.S. Dist. LEXIS 140924, pp. 21-22 (E.D. La. 9/30/2013). The court found "the potential to ensnare numerous innocent internet users into litigation by permitting Rule 45 subpoena places a burden on them that outweighs Plaintiff's need for discovery." *BKGTH Productions*, 213 U.S. Dist. LEXIS 140924, p. 22. This exact concern was rejected as a basis for quashing a subpoena issued to an IPS in *West Coast Productions, Inc. v. Does 1-351*, 2012 U.S. Dist. LEXIS 92239 (S.D. Tx. 7/3/2012). The movers asserted "the subpoenas unduly burden them because they did not in fact infringe Plaintiff's work." *West Coast Productions*, 2012 U.S. Dist. LEXIS 92239, p. 14. Rejecting the argument, the court held, "Being named a defendant in this type of case does not in and of itself constitute an undue burden to warrant quashing a subpoena." *Id.* See also *Cobbler Nevada, LLC v. Does 1-21*, 2015 U.S. Dist. LEXIS 150927, pp. 5-6 (D. Colo. 11/6/2015) (ruling the fact "the information Plaintiff seeks will not conclusively establish liability does not persuade the Court that the subpoenas should be quashed [because] [t]o hold otherwise would impose a standard inconsistent with the Federal Rules of Civil Procedure").

In this regard, it is worth noting courts, including the Fifth Circuit, have consistently held subscribers do not have an expectation of privacy in their subscriber information because they have conveyed it to another person, the ISP. *U.S. v. Weast*, No. 14-11253 (5th Cir., Jan. 26, 2016) ("IP addresses and peer-to-peer-shared files are widely and voluntarily disseminated in the course of normal use of networked devices and peer-to-peer software, just as cell phone location data are disseminated in the course of normal cell phone use."); *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001) ("computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person—the system operator"); *Sony Music Entm't, Inc. v. Does 1-40*, 326 F.Supp.2d 556, 566 (S.D.N.Y. 2004) ("defendants

have little expectation of privacy in downloading and distributing copyrighted songs without permission"); *Aristo Records, LLC v. Doe No. 1*, 254 F.R.D. 480, 481 (E.D.N.C. 2008); *U.S. v. Hambrick*, 55 F.Supp.2d 504, 508 (W.D. Va. 1999), aff'd, 225 F.3d 656 (4th Cir. 2000).  This is because a person can have no legitimate expectation of privacy in information he or she voluntarily communicates to third parties.  *See, e.g., Smith v. Maryland*, 442 U.S. 735, 743-44 (1979); *U.S. v. Miller*, 425 U.S. 435, 442-43 (1976); *Couch v. U.S.*, 409 U.S. 322, 335-36 (1973); *Guest v. Leis*, 255 F.3d at 335; *U.S. v. Kennedy*, 81 F.Supp.2d 1103, 1110 (D. Kan. 2000); *U.S. v. Hambrick*, 55 F.Supp.2d at 508; *Dallas Buyers Club, LLC v. Does 1-10*, 2015 U.S. Dist. LEXIS 172753 (D. Mich. 12/30/2015); *DBC Films (USA), Inc. v. Does 1-29*, 2015 U.S. Dist. LEXIS 167826, p. 5 (N.D. Ill. 12/15/2015); *Cobbler Nevada, LLC v. Does 1-30*, 2015 U.S. Dist. LEXIS 160665, p. 16 (E.D. Mich. 12/1/2015).

Further, courts have uniformly held the First Amendment's protection for anonymous speech does not provide a basis for quashing a subpoena to obtain identifying information in a copyright infringement matter such as the instant case.  In *Arista Records, LLC v. Doe 3*, 604 F. 3d. 110, 118 (2nd Cir. 2009), the court held, "The First Amendment does not, however, provide a license for copyright infringement.  Thus, to the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment."  (citations omitted.)  *See Interscope Records v. Does 1-14*, 558 F.Supp.2d 1176, 1178 (D. Kan. 2008) (a person using the Internet to distribute or download copyrighted music without authorization is not entitled to have their identity protected from disclosure under the First Amendment); *see also Arista Records LLC v. Does 1-19*, 551 F.Supp.2d 1, 8-9 (D.D.C. 2008) (finding the "speech" at issue was that Doe defendant's alleged infringement of copyrights

and "Courts have routinely held that a defendant's First Amendment privacy interests are exceedingly small where the 'speech' is the alleged infringement of copyrights").

In *BKGTH Productions, LLC*, the court also expressed a concern that granting a motion for expedited discovery may lead to improper joinder cases that "arise from a court's granting of expedited discovery for Doe defendants." 2013 U.S. Dist. LEXIS 140924, pp. 22-23. The instant case is a copyright infringement action against a single Doe defendant. Any issues relating to improper mass joinder are absent here. No justification exists for introducing such phantom issues into cases where none are raised.

The Doe Defendant copied and distributed the Motion Picture without authorization hiding behind an IP address. Using publicly available technology, the unique IP address assigned to Doe at the time of infringement can be readily identified. When the subscriber entered into a service agreement with the ISP, they knowingly and voluntarily disclosed personal identification information to the ISP. As set forth above, this identification information is linked to the IP address used by Doe at the time of infringement and recorded in the ISP's subscriber activity logs. Because no legitimate expectation of privacy in this information exists, this Court should grant Plaintiff leave to seek expedited discovery. Any burden on a subscriber, who may or may not be a liable party, is nominal and is offset by the statutory fee charged by the ISP for responding to the subpoena. Further, absent leave for the requested discovery DBC will be unable to protect its copyrighted Motion Picture from continued infringement.

## CONCLUSION

For all of the above reasons, considering all the circumstances present here and the showing made by DBC, this Court should find good cause exists and grant DBC's motion. DBC

should be authorized to serve limited discovery prior to a Rule 26(f) conference on a non-party

ISP to determine the true identity of Doe.

Respectfully submitted,

*s/Pierre V. Miller II*
Pierre V. Miller II #17712
Patrick H. Patrick #14297
Patrick Miller, LLC
400 Poydras Street, Suite 1680
New Orleans, Louisiana 70130
Telephone:     (504) 527-5400
Facsimile:     (504) 527-5456
E-mail: pmiller@patrickmillerlaw.com
E-mail: ppatrick@patrickmillerlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the ____ day of February, 2016, a true and accurate copy

of the foregoing was electronically filed with the Court.  As the individual Defendant has not yet

been identified, a copy has not been provided to Defendant at this time.  A copy of the foregoing

will be provided to Defendant after Defendant is identified and served.

*s/Pierre V. Miller II*
Pierre V. Miller II